UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
ALFONSO MONTUFAR GOMEZ,

               Plaintiff,

                                        <u>MEMORANDUM & ORDER</u>
       -against-                           23-CV-04942 (OEM)

COMMISSIONER OF SOCIAL SECURITY,

               Defendant.
-------------------------------------------------------------------x
ORELIA E. MERCHANT, United States District Judge:

    Plaintiff Alfonso Montufar Gomez ("Gomez") filed this action under 42 U.S.C. § 405(g)

and § 1383(c)(3) seeking judicial review of the final decision of the Commissioner of the Social

Security Administration (SSA) denying his applications for disability insurance benefits (DIB)

under Title II of the Social Security Act, 42 U.S.C. §§ 401–434, and for supplemental security

income (SSI) under Title XVI of the Social Security Act, *id.* §§ 1381–1383f. ECF No. 1.  Gomez

moved for judgment on the pleadings.  ECF No. 11.  The Commissioner responded in opposition,

ECF No. 12, and Gomez filed a reply, ECF. No. 13.

    Having considered the parties' pleadings and arguments, and the administrative record,

ECF No. 6, the Court denies Gomez's motion and affirms the Commissioner's decision.

## BACKGROUND

### A.    Gomez's DIB and SSI Applications

    Gomez protectively applied for DIB and SSI in July 2019, alleging that he has been

disabled and unable to work since November 8, 2013, because of bipolar disorder and panic

attacks, with a last date insured of December 30, 2013.  AR 362–72, 97–106.[1]  The Commissioner

---

[1]    The transcript of the administrative record, ECF No. 6, is referenced herein by the abbreviation "AR." All
page numbers cited in the AR refer to the bold Bates stamp at the bottom right corner of each page.

denied Gomez's applications initially and on reconsideration. AR 97–122, 145–168.  At Gomez's

request, an administrative law judge (ALJ) held three telephonic hearings regarding his

applications on July 1, 2021, November 22, 2021, and June 14, 2022.  AR 34–50, 51–66, 67–96.

The ALJ also heard testimony from medical and vocational experts.  AR 59–66, 90–94.

### B.      The ALJ's Findings

On August 1, 2022, the ALJ issued a written decision finding that Gomez was not disabled

within the meaning of the Social Security Act and applicable regulations and denying his claims

for DIB and SSI.  AR 10–26.  The ALJ made the following findings:

1.   The claimant meets the insured status requirements of the Social Security
     Act through December 31, 2013.
2.   The claimant has not engaged in substantial gainful activity since November
     8, 2013, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et
     seq.).
3.   The claimant has the following severe impairments: schizoaffective
     disorder and bipolar disorder (20 CFR 404.1520(c) and 416.920(c)).
4.   The claimant does not have an impairment or combination of impairments
     that meets or medically equals the severity of one of the listed impairments
     in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d),
     404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
5.   After careful consideration of the entire record, the undersigned finds that
     the claimant has the residual functional capacity to perform a full range of
     work at all exertional levels but with the following non-exertional
     limitations: he is limited to simple, routine and repetitive tasks not at a
     production rate pace; simple decision-making; limited to occasional
     interaction with coworkers, supervisors and the public; occasional changes
     in a routine work setting.
6.   The claimant is unable to perform any past relevant work (20 CFR 404.1565
     and 416.965).
7.   The claimant was born on March 25, 1968 and was 45 years old, which is
     defined as a younger individual age 18-49, on the alleged disability onset
     date; he is currently 54 years old which is defined as closely approaching
     advanced age (20 CFR 404.1563 and 416.963).
8.   The claimant has at least a high school education (20 CFR 404.1564 and
     416.964).
9.   Transferability of job skills is not material to the determination of disability
     because using the Medical-Vocational Rules as a framework supports a
     finding that the claimant is "not disabled," whether or not the claimant has

2

           transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11.    The claimant has not been under a disability, as defined in the Social Security Act, from November 8, 2013, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

AR 13–25.  The Social Security Appeals Council denied Gomez's request for review on April 27, 2023, making the ALJ's decision the final decision of the Commissioner.  AR 1–5.

## C.    Appeal Under 42 U.S.C. §§ 405(g) and 1383(c)(3)

Gomez filed this action for review on June 30, 2023, ECF No. 1, and this Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).  Gomez makes two arguments in support of his position that the Court should remand his applications to the SSA for reconsideration.  First, Gomez argues that the ALJ violated SSA regulations by failing to develop the record on the ground that the record does not include any of his mental health treatment records before October 2016 and does not include all of his mental health treatment records from October 2016 to August 2022.  ECF No. 11-1.  Second, Gomez argues that the ALJ's RFC determination is not supported by substantial evidence on the grounds that the ALJ relied on non-examining consultative medical expert Dr. Gerald Koocher, M.D., failed to obtain missing records, and failed to properly assess Licensed Master Social Worker Angel Estrella's medical statement in formulating Gomez's RFC determination.  *Id.*  The Commissioner responds that the ALJ followed SSA regulations and that the ALJ's decision is supported by substantial record evidence.  ECF No. 12-1.  Gomez's reply reiterates his arguments that the ALJ's analysis warrants reversal.  ECF No. 13.

## STANDARDS OF REVIEW

### A.    Standard of Review

This Court's review of an ALJ's decision is limited to determining (1) whether the ALJ's findings are supported by substantial evidence and (2) whether the ALJ applied the correct legal standards. *See* 42 U.S.C. § 405(g).  "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations."  *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (alteration in original) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  Substantial evidence is less than a preponderance but "more than a mere scintilla" and means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 103 (quoting *Consolidated Edison Co.,* 305 U.S. at 229).

Claimants who were denied disability benefits at SSA level may bring an action in federal court seeking judicial review of the Commissioner's denial of their benefits.  42 U.S.C. §§ 405(g), 1383(c)(3).  The reviewing court does not have the authority to conduct a *de novo* review and may not substitute its own judgment for that of the ALJ, even when it might have justifiably reached a different result. *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012); *see Schmidt v. Comm'r of Soc. Sec.*, 20-cv-3594 (KAM), 2022 WL 1540054, at *2 (E.D.N.Y. May 16, 2022). Rather, "[a] district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error."  *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008) (quoting *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)).  "The substantial evidence standard means once an ALJ finds facts, [the court] can reject those facts 'only if a reasonable factfinder would have to

conclude otherwise.'" *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (citations omitted).

###   B.      Determining Disability at the Administrative Level

DIB and SSI benefits are available to individuals who are disabled, which is defined in this context as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

ALJs must employ a "five-step sequential evaluation process" to determine whether a claimant is disabled, proceeding through each step until a determination can be reached. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  For purposes of this case, the regulations governing disability determination for DIB and SSI benefits are identical.  20 C.F.R. §§ 404.1520, 416.920.  At step one, the ALJ considers the claimant's work activity.   20 C.F.R.  §§  404.1520(a)(4)(i), 416.920(a)(4)(i).  If the claimant is performing substantial gainful activity, then the claimant is not disabled.  At step two, the ALJ determines whether the claimant suffers from "a severe medically determinable physical or mental impairment" or "combination of impairments" that meets the 12-month durational requirement.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the claimant does not have a severe impairment or combination of impairments [that meets the durational requirement], then the claimant is not disabled.  At step three, the ALJ considers whether the claimant's medical impairment or impairments appear on a list maintained by the SSA that identifies and defines impairments that are of sufficient severity as to prevent any gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the claimant's impairment meets or equals

one of the listings, then the ALJ will find the claimant disabled.  If not, the ALJ proceeds to step four.

At step four, the ALJ evaluates the claimant's past relevant work and "residual functional capacity," defined as "the most [the claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1)); *see* 20 C.F.R §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  Past work is relevant to this analysis if the claimant performed the work within the past 15 years, the work qualifies as substantial gainful activity, and the work lasted long enough for the claimant to learn how to do it.  20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1).  If the claimant's residual functional capacity (RFC) permits her to perform past relevant work, she is not disabled.  If a claimant cannot perform past relevant work, the ALJ proceeds to step five and determines whether, "in light of [her] residual functional capacity, age, education, and work experience," a claimant can perform other substantial gainful employment.  *Id.*  While the claimant bears the burden of proof during the first four steps, at step five "the burden shifts to the Commissioner to demonstrate that there are jobs in the national economy that the claimant can perform."  *Nieves v. Comm'r of Soc. Sec.*, 20-CV-8873 (SLC), 2022 WL 951107, at *7 (S.D.N.Y. Mar. 30, 2022) (citing *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009).  Claimants who can perform such work are not disabled.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## DISCUSSION

Gomez makes two arguments in support of his position that the Court should remand his DIB and SSI claims to the SSA for reconsideration.  First, Gomez argues that the ALJ violated SSA regulations by failing to develop the record, because the record does not include any mental health treatment records before October 2016 and does not include all mental health treatment records from October 2016 to August 2022.  ECF No. 11-1.  Second, Gomez argues that the ALJ's

6

RFC determination is not supported by substantial evidence. *Id.*  The Court addresses each argument in turn.

### A.      The ALJ Did Not Fail to Develop the Record

Gomez argues that remand is necessary because the ALJ failed to fully develop the record. Gomez alleges two gaps in the administrative record that warrant remand: (1) there are no mental health treatment records before October 2016 and (2) some mental health treatment records from October 2016 to August 2022 were missing.  ECF No. 11-1.  Gomez argues that the "absence of medical [*sic*] regarding [his] mental impairments reflects the ALJ's failure to develop the record despite [the ALJ's] obligation to do so" and that the Court, on remand, should instruct the ALJ to obtain these mental health treatment records.  *Id.*  In response, the Commissioner argues that Gomez failed to point to any specific medical providers or dates of treatment in support of his position and that the record was nonetheless sufficiently complete for the ALJ to issue a decision on Gomez's DIB and SSI applications.  ECF No. 12-1.

An ALJ's "affirmative obligation to develop the administrative record" is well-established. *See, e.g., Cook v. Comm'r of Soc. Sec.*, 818 F. App'x 108, 108 (2d Cir. 2020) (summary order) (citing *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996)); *see also* 42 U.S.C. § 423(d)(5)(B).  The ALJ must "develop a complete medical history of at least the preceding twelve months for any case" in which disability is not found, and also must "make every reasonable effort to obtain from the individual's treating physician (or other treating health care provider) all medical evidence." *See* 42 U.S.C. § 423(d)(5)(B).  Despite this affirmative duty, the ALJ's obligation is not unlimited. *See Jordan v. Comm'r of Soc. Sec.*, 142 F. App'x 542, 543 (2d Cir. 2005) (summary order) (duty fulfilled where the ALJ kept the record open to allow the plaintiff to secure medical records, where the plaintiff did not request assistance obtaining such records, and where the plaintiff ultimately

told the ALJ there was "nothing further to add" to the record); *see also Miller v. Comm'r of Soc. Sec. Admin.*, 784 F. App'x 837, 839 (2d Cir. 2019) (summary order) (holding that where the record contained no obvious gaps, where the Commissioner "obtained records from multiple healthcare providers, including treating physicians, therapists, and evaluators," and where the claimant failed to specify which records are missing or what such records would show, the court found that the ALJ had no duty to further develop the record).  To determine whether the ALJ satisfied the affirmative duty to develop the record, the Court must assess "(1) whether there was an obvious gap in the record that should have prompted the ALJ to seek additional information; and (2) whether the ALJ fulfilled [her] duty by making every reasonable effort to fill that gap." *Pinkowski v. Comm'r of Soc. Sec.*, 19-CV-00173 (EAW), 2020 WL 1969312, at *5 (W.D.N.Y. Apr. 24, 2020).  Courts have found an obvious gap where "it is apparent from the face of the record that the record lacks necessary information." *Hilsdorf v. Comm'r of Soc. Sec.*, 724 F Supp. 2d 330, 346 (E.D.N.Y. 2010).

The parties filed a joint stipulation of relevant facts from the certified administrative record that provides the following facts.  ECF No. 14.  In connection with his DIB and SSI applications, Gomez indicated that he had received mental health treatment at Fedcap Behavioral Health Services ("Fedcap") through 2018, but did not provide a date of his first visit and last treatments or any approximate dates for other treatments. AR 419, 432–33.

On or around June 11, 2021, Gomez reported receiving treatment at Elmhurst Hospital with Dr. Dhruv Gupta between January and March 2021 and treatment with Dr. Shin Hoon in May and June 2021.  AR 470.  In a June 22, 2021 letter, Gomez notified the agency that no records exist from FEGS and that he did not have treatment records to support the medical source statement from Estrella, who had previously been treating Gomez.  AR 472.  Gomez's representative also stated in that letter that Gomez "ha[d] been unable to remember where he received medical

treatment" and therefore "ha[d] been completely unhelpful regarding the development of the claim." *Id*.  Recognizing the "lack of records," the representative requested that the ALJ order a psychiatric consultative examination "in an effort to obtain an assessment on the claimant's current functionality" because such "current examination . . . [would be] [Gomez's] only chance of proving he is disabled." *Id*.

At the July 1, 2021 hearing, the first of three hearings the ALJ held, Gomez's representative told the ALJ that he was still in the process of gathering records from Fedcap, Elmhurst Hospital, and NYU Langone.  AR 40–42.  The ALJ therefore stated that she "w[ould] leave the record open" for 30 days and would extend the deadline if necessary.  AR 42.

The agency arranged for a psychiatric consultative examination on August 3, 2021, but Gomez failed to attend.  AR 472, 495.  On August 10, 2021, Gomez's representative submitted medical records from providers at Fedcap and Elmhurst Hospital and confirmed that NYU Langone had no records for Gomez.  AR 475.

At the second hearing held on November 22, 2021, the ALJ heard testimony from non-examining medical expert Dr. Koocher to provide his medical opinion based upon his review of the medical evidence.  AR 59–65.  Dr. Koocher testified that the "record [was] extremely shallow and inconsistent" and therefore advised the ALJ that a consultative examination was needed to evaluate Gomez's current circumstances in a context different from Estrella.  AR 60, 64.  The ALJ agreed and ordered a consultative examination at the hearing and scheduled another hearing before her after that examination.  AR 64–66.

In anticipation of the third and final hearing on Gomez's DIB and SSI applications, Gomez's representative informed the ALJ by letter that their request for medical evidence from Elmhurst Hospital was being processed and would submit these requests upon receipt.  AR 502.

9

On June 14, 2022, the ALJ held the final hearing and heard testimony from Gomez, Dr. Koocher, and vocational expert Melissa Fass-Karlin. AR 69–95. The ALJ stated that Gomez attended the psychiatric consultative examination in February 2022, which was conducted by Dr. John Nikkah, Ph.D. AR 73; *see* AR 623–29. Dr. Koocher found that Dr. Nikkah's psychiatric evaluation report, AR 623–29, was helpful in shoring up the medical record and was sufficient for Dr. Koocher to provide his medical opinion on whether Gomez was medically impaired or disabled under SSA regulations. The ALJ also took notice of the letter by Gomez's presentative stating that records from Elmhurst Hospital were still pending, but Gomez testified that other than these records, there were no other doctors or hospitals that treated him. AR 74. In light of the Elmhurst Hospital records still being processed, the ALJ kept the record open for another 30 days. *Id.* On July 6, 2022, Gomez's representative confirmed that all available records had been submitted and the record was complete. AR 503. The representative requested that the ALJ issue a decision on the case. *Id.*

On these facts, the ALJ did not err in issuing a decision because she fulfilled her duty to develop the record and it was reasonable for her to conclude that there were no obvious gaps in the record. Before the first hearing was held in July 2021, Gomez's counsel informed the ALJ that certain medical records from Fedcap, Elmhurst Hospital, NYU Langone, and social worker Estrella were outstanding, that counsel had requested these records, and that counsel would keep the ALJ informed on the status of these records. AR 472–74. Based on counsel's representations that the record remained incomplete, and that counsel was in the process of obtaining them, the ALJ left the record open at the end of the first hearing for 30 days. Subsequently, Gomez's counsel informed the ALJ that NYU Langone did not have any records for Gomez and that records from Fedcap and Elmhurst Hospital were included in the record for the ALJ's consideration. AR 475–

76. At the next hearing, the ALJ ordered a consultative examination and left the record open.  At the last hearing held in June 2022, counsel informed the ALJ that records from Elmhurst Hospital were still outstanding, and the ALJ therefore left the record open for an additional 30 days and would extend the time if counsel found it necessary.  Following that hearing, Gomez's counsel represented to the ALJ in a written letter that no additional records were outstanding, the record was complete, and urged the ALJ to issue a decision.  In sum, nearly a year lapsed from the date the first hearing was held in July 2021 to the ALJ's issuance of her decision in August 2022, and in that time, the ALJ held three hearings to develop the record.  Thus, the ALJ satisfied her duty to develop the record.  *See Gregory B. v. Comm'r of Soc. Sec.*, 23-CV-01011 (GRJ), 2024 WL 2304689, at *7 (S.D.N.Y. May 17, 2024) (once claimant's counsel confirmed no records were outstanding, "the Court has no trouble concluding that the ALJ satisfied his duty to develop the record." (citations omitted)); *Pinkowski,* 2020 WL 1969312, at *5 (duty fulfilled where the ALJ kept the record open for an additional thirty days and where the plaintiff acknowledged there was nothing further to add to the record); *Melissa I. o/b/o R.J.R.D. v. Comm'r of Soc. Sec.*, 20-CV-1799 (WBC), 2022 WL 3358138, at *4 (W.D.N.Y. Aug. 15, 2022) ("Although the ALJ has the duty to develop the record, such a duty does not permit a claimant, through counsel, to rest on the record—indeed, to exhort the ALJ that the case is ready for decision—and later fault the ALJ for not performing a more exhaustive investigation.") (citing *Lindsay B. v. Comm'r of Soc. Sec.*, 20-CV-00897, 2021 WL 4912588, at *4 (W.D.N.Y. Oct. 21, 2021)).

Nonetheless, Gomez argues that the ALJ did not have any of his medical records from 2013 and 2016 and did not have a complete set of his medical records from 2016 to 2022.  As the Commissioner correctly points out, Gomez's motion papers fail to identify specific medical providers or specific dates of treatment that could have supplemented the record.  These broad date

ranges do not identify with enough specificity the types and the dates of treatments Gomez received and do not name the medical institutions or the treating physicians that provided these purported treatments to Gomez. *See Jerome M. v. Saul*, 19-CV-289 (JLS), 2020 WL 7385468, at *4 (W.D.N.Y. Dec. 15, 2020) ("Nothing in the record—including the hearing transcript—indicates what treatments occurred at [institution from which records were missing], the exact dates that any treatment notes would apply to, or how the records could prove Plaintiff's disability."). Indeed, Gomez's counsel informed the ALJ that Gomez was unable to remember where and when he had previously been treated for his alleged disorders and Gomez did not identify any other medical providers during his testimony. Counsel acknowledged that the lack of clarity and specificity with respect to Gomez's previous treatments impeded counsel's own ability to identify and seek said records. Gomez's counsel further informed the ALJ that withdrawal of Gomez's DIB applications might be appropriate:

> ALJ: Okay. Now, with regard to the [DIB claim], will you be withdrawing [DIB claim]?
> ATTY: Yeah, so, like I said, since I haven't seen the records, and I don't know the dates of these treatments, I can't do that yet.
> ALJ: Okay.
> ATTY: But certainly, you know, when these records come in, if I don't have anything prior to the end of 2013, we'll withdraw the [DIB claim].

AR 41.

The SSA regulations require the ALJ to make reasonable efforts to obtain missing medical records from the claimant's own medical sources. 20 C.F.R. § 404.1512(b)(1)(i) ("Every reasonable effort means that [the ALJ] will make an initial request for evidence from your medical source or entity that maintains your medical source's evidence, and, at any time between 10 and 20 calendar days after the initial request, if the evidence has not been received, [the ALJ] will make one follow-up request to obtain the medical evidence necessary to make a determination.").

However, neither Gomez nor his counsel identified medical sources from these purported missing. Therefore, the ALJ was in no position to make any requests from unidentified medical sources. *See Vella v. Comm'r of Soc. Sec.*, 394 F. App'x 755, 758 (2d Cir. 2010) ("The ALJ obtained all available medical records from sources Vella identified. In light of the lack of records regarding the relevant period, the ALJ requested, received, and considered additional lay statements from Vella's brother and friend."). Thus, the Court concludes that the ALJ's decision does not warrant remand because the record does not contain an obvious gap of any identifiable or specific records that are missing or any explanation how any such unidentified records would affect Gomez's case. *Reices-Colon v. Astrue*, 523 F. App'x 796, 799 (2d Cir. 2013) (concluding that the claimant's record supplementation argument was baseless because she identified no specific record that was missing or explained how it would affect her case); *see Pinkowski*, 2020 WL 1969312, at *5; *see also Obo v. Comm'r of Soc. Sec.*, 19-CV-1628 (DB), 2021 WL 2941734, at *19 (W.D.N.Y. July 13, 2021) (finding that ALJ did not commit error when "Plaintiff [did] not explain what [missing] evidence from [the period] was needed to adjudicate this case"); *Morris v. Berryhill*, 721 F. App'x 25, 27-28 (2d Cir. 2018) (summary order) (explaining that the mere "theoretical possibility" of missing records that might be probative of disability "does not establish that the ALJ failed to develop a complete record"); *cf. Jordan*, 142 F. App'x at 543 (finding no error for failure to develop record despite ALJ not contacting medical source for updated record, where the claimant's counsel volunteered to obtain the records, the ALJ kept the record open, counsel did not subsequently indicate that necessary evidence was still outstanding, and the claimant did not request the ALJ's assistance). Moreover, if Gomez had anticipated submitting any records from these periods, he could have requested another extension for good cause. But more to the point and significantly: these purported records were not submitted to the

13

administrative record on appeal with the Appeals Council.  Nor were they provided here in this action.

Nonetheless, there was ample evidence in the record for the ALJ to rely upon in making her assessment.  Given the weak record from the relevant period, the ALJ ordered a psychiatric consultative examination at Gomez's counsel request who asserted that "a current examination by a psychiatrist is [Gomez's] only chance of proving he is disabled"; heard testimony twice from medical expert Dr. Koocher; and considered other treatment records.  *See Vella*, 394 F. App'x at 758.  Consequently, the Court finds that the ALJ did not fail to develop the record.

### B.    Substantial Evidence Supports the ALJ's RFC Formulation

Next, Gomez argues that the ALJ's RCF finding is not supported by substantial evidence because "there is almost no evidence in the record that comments on many of the RFC elements" and that the "ALJ relied heavily on the opinion of non-examining agency medical expert Dr. Koocher."  ECF No. 11-1, 16.  Gomez asserts that Dr. Koocher did not examine or speak to Gomez and did not review the entire record.  *Id.* Gomez further argues that the ALJ erred when she found social worker Estrella's opinion not persuasive and inconsistent because the ALJ relied on treatment records dated three years after Estrella rendered his opinion.  *Id.*

### 1.    RFC Determination

SSA regulations define a claimant's RFC as "what [the claimant] can still do despite his or her limitations." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (citing SSR 96-8p, 1996 WL 374184).  In rendering an RFC determination, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).  Specifically, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective symptoms,

including pain and descriptions of other limitations.  20 C.F.R. §§ 404.1545, 416.945. An ALJ's

conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his

decision." *Matta*, 508 F. App'x at 56.  However, an ALJ is not a medical professional, and "is not

qualified to assess a claimant's RFC on the basis of bare medical findings." *Ortiz v. Colvin*, 298

F. Supp. 3d 581, 58687 (W.D.N.Y. 2018) (quoting *Dailey v. Astrue*, 09-cv-0099, 2010 WL

4703599, *11 (W.D.N.Y. Oct. 26, 2010)).  In other words:

> An ALJ is prohibited from 'playing doctor' in the sense that 'an ALJ may not
> substitute his own judgment for competent medical opinion.' [. . .] This rule is most
> often employed in the context of the RFC determination when the claimant argues
> either that the RFC is not supported by substantial evidence or that the ALJ has
> erred by failing to develop the record with a medical opinion on the RFC.

*Quinto v. Berryhill*, 3:17-cv-00024 (JCH), 2017 WL 6017931, at *12 (D. Conn. Dec. 1, 2017)

(citations omitted).  "[A]s a result[,] an ALJ's determination of RFC without a medical advisor's

assessment is not supported by substantial evidence." *Dennis v. Colvin*, 195 F. Supp. 3d 469, 474

(W.D.N.Y. 2016) (quotation and citation omitted).  However, at bottom, "[a]n RFC finding is

administrative in nature, not medical, and its determination is within the province of the ALJ, as

the Commissioner's regulations make clear." *Curry v. Comm'r of Soc. Sec.,* 855 F. App'x 46, 48

n.3 (2d Cir. 2021).

"Substantial evidence "is 'more than a mere scintilla.  It means such relevant evidence as

a reasonable mind might accept as adequate to support a conclusion.'" *Selian v. Astrue*, 708 F.3d

409, 417 (2d Cir. 2013) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  In

determining whether the Commissioner's findings were based on substantial evidence, the Court

must ascertain that the agency considered all evidence in the case record to reach its findings.  20

C.F.R. § 404.1520(a)(3).  The Court "is required to examine the entire record, including

contradictory evidence and evidence from which conflicting inferences can be drawn." *Seilan*,

708 F.3d at 417.  "However, the Court is mindful that 'it is up to the agency, and not this [C]ourt, to weigh the conflicting evidence in the record.'"  *Lebby v. Comm'r of Soc. Sec.*, 20-cv-4760 (PKC), 2022 WL 580983, at *7 (E.D.N.Y. Feb. 24, 2022) (alteration in original) (quoting *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998).  "[I]f there is substantial evidence in the record to support the Commissioner's findings as to any fact, they are conclusive and must be upheld."  *Lebby*, 2022 WL 580983, at *7.  (citing 42 U.S.C. § 405(g)).

Here, the ALJ made the following RFC formulation as to Gomez:

After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: he is limited to simple, routine and repetitive tasks not at a production rate pace; simple decision-making; limited to occasional interaction with coworkers, supervisors and the public; occasional changes in a routine work setting.

AR 17.

The Second Circuit has "frequently cautioned" ALJs not to rely too heavily on consultative examiners and non-examining experts, particularly in the context of mental illness where "a one-time snapshot of a claimant's status may not be indicative of her longitudinal mental health." *Estrella v. Berryhill*, 925 F.3d 90, 98 (2d Cir. 2019).  For that reason, Dr. Koocher could not provide the *exclusive* evidence for the ALJ's RFC determination.  *See Lebby*, at *7-8 (remanding after finding reliance "exclusively" on non-examining expert opinion cannot constitute substantial evidence); *Avila v. Comm'r of Soc. Sec. Admin.*, 20-cv-1360 (ER) (DCF), 2021 WL 3774317, at *20 (S.D.N.Y. Aug. 9, 2021) ("Even where a non-examining opinion is properly afforded some weight, it, alone, cannot be considered substantial evidence."), *report and recommendation adopted*, 20-CV-1360 (ER) (DCF), 2021 WL 3774188 (S.D.N.Y. Aug 25, 2021).  However, the ALJ properly considered Gomez's allegations, the objective evidence, and the medical

examinations of Dr. Gupta, Dr. Nikkah, and Dr. Koocher.  AR 17–24.  The ALJ, resting entirely

on the opinion of Dr. Nikkah, a treating physician, states:

> The consultative examination by Dr. Nikkah on February 8, 2022 (Ex. 7F), when
> the claimant's attention and concentration were mildly to moderately impaired,
> when his memory skills were moderately impaired, and when Dr. Nikkah estimated
> that the claimant's intellectual functioning was in the below average range (Ex.
> 7F/4-5), supports the limitations to simple, routine, and repetitive tasks not at a
> production rate pace, and to simple decision-making. The claimant's history of
> auditory hallucinations and mild paranoia when he does not take his medication
> (Ex. 4F/14, 18; 9F/21) supports the limitation to occasional interaction with
> coworkers, supervisors and the public, and to occasional changes in a routine work
> setting.

AR 24. Accordingly, the ALJ did not rely too heavily on the opinion of the non-examining

physician.[2]

## 2.    Supportability and Consistency of Estrella

Gomez argues that the ALJ failed to properly assess Estrella's medical statement under the

SSA regulations in determining Gomez's RFC.

For DIB and SSI claims filed on or after March 27, 2017, the applicable SSA regulations

provide that the agency "will not defer or give any specific evidentiary weight, including

controlling weight, to any medical opinion(s) or prior administrative findings, including those from

[the claimant's] medical sources."[3] 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, the ALJ

---

[2] Gomez's reliance on *Abate v. Comm'r of Soc. Sec.*, 2020 U.S. Dist. LEXIS 78164, at *10-12 (E.D.N.Y. May 4, 2020) to support his argument is misplaced.  The claimant in that case filed her claims in 2015 therefore the court applied the "treating physician rule" applicable under prior SSA regulations.  In 2017, new regulations were issued that change the standard for evaluating medical opinion evidence for claims filed on or after March 27, 2017.  *See* 20 C.F.R. § 404.1520c.  Because Gomez filed his claim in July 2019, the "treating physician rule" does not apply.
[3] This is a departure from the regulations governing claims filed before March 27, 2017, which "[g]enerally . . . g[a]ve more weight to the medical opinion of a source who ha[d] examined [the claimant] than to the medical opinion of a medical source who ha[d] not examined [the claimant]." 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1). Those regulations specifically required an ALJ to give controlling weight to a medical opinion from the claimant's treating physician if the opinion was "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [was] not inconsistent with other substantial evidence in [the] case record[.]" *Id.* §§ 404.1527(c)(2), 416.927(c)(2).

must "evaluate the persuasiveness" of all medical opinions and prior administrative medical findings based on five factors: (1) supportability; (2) consistency; (3) relationship with the claimant, including length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship; (4) specialization; and (5) other factors including, but not limited to, evidence showing that the medical source is familiar with other evidence in the record or has an understanding of the SSA's policies and evidentiary requirements. §§ 404.1520c(a), (c)(1) - (5), 416.920c(a), (c)(1) - (5). The regulations specifically require ALJs to "articulate in [their] determination[s] or decision[s] how persuasive [they] find all of the medical opinions" in a claimant's record. *Id.* §§ 404.1520c(b), 416.920c(b).

Supportability and consistency are "[t]he most important factors" in this analysis. *Id.* §§ 404.1520c(a), 416.920c(a). In assessing supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . ., the more persuasive the medical opinions . . . will be." *Id.* §§ 404.1520c(c)(1), 416.920c(c)(1). In assessing consistency, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." *Id.* §§ 404.1520c(c)(2), 416.920c(c)(2). The SSA has promised claimants that it "will explain how [it] considered the supportability and consistency factors . . . in [its] determination or decision" and "may, but [is] not required to, explain how [it] considered the [remaining] factors . . . ."[4] *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2).

---

[4] This differs from the regulations governing DIB and SSI claims filed before March 27, 2017, which promised claimants that the SSA would "always give good reasons in [its] notice of determination or decision for the weight [it] g[a]ve [the] treating source's medical opinion." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

On September 18, 2019, Licensed Master Social Worker Angel Estrella completed a "medical assessment of ability to do work related activities (mental)" form with respect to Gomez. AR 508-09.  The form asked the evaluator to use the following metrics to assess the individual's ability to perform certain work-related activities: "unlimited or very good" means the individual's ability to function in this area is "more than satisfactory"; "good" means the individual's ability to function in this area is "limited but satisfactory"; "fair" means that the individuals' ability to function is "seriously limited but not precluded"; and "poor or none" means that the individual has "no useful ability to function."  AR 508.  In the category "making occupational adjustments," Estrella checked that Gomez had a "poor or none" rating to "follow work rules," "relate to co-workers," "deal with the public," "use judgment," "interact with supervisors," "deal with work stresses," "function independently," and "maintain attention/concentration."  *Id.*  Estrella did not provide details in narrative form to describe his findings in a comment section.

In the category of "making performance adjustments," Estrella checked that Gomez also had a "poor or none" rating to "understand, remember, and carry out" "complex job instructions," "detailed but not complex job instructions," and "simple job instructions." AR 509.  Estrella did not provide details to describe his findings in a comment section.  In the category of "making personal-social adjustments," Estrella marked that Gomez had "good" rating in terms of maintaining personal appearance; "fair" ratings in terms of behaving in an emotionally stable manner and relating predictably in social situations"; and a "poor or none" rating in demonstrating reliability."  Estrella did not provide details in narrative form to describe his findings in a comment section.  In a section asking the evaluator to state any other work-related activities which are affected by the individual's impairments, Estrella left it blank.  *Id.*  Estrella found marked "yes" to the issue of whether Gomez could manage his benefits in his best interest.  Id.

The ALJ found that Estrella's opinion "[was] both internally inconsistent, and inconsistent with the rest of the medical record." AR 21. As to the supportability factor, the ALJ opined that Estrella's opinion was not supported by his own findings on examination for the following reasons:

> For instance, Mr. Estrella wrote in September 2019 that the claimant had poor or no ability to understand, remember, and carry out simple job instructions, but in his own examination of the claimant on January 9, 2019, LMSW Estrella wrote that the claimant's thought process was goal directed and logical, that the claimant was able to concentrate for intermittent periods, that he was alert and aware of his surroundings, that his remote memory was unimpaired, but that his recent memory was impaired. He also wrote that the claimant's insight was good, and his judgment was unimpaired, and that his impulse control was unimpaired. (Ex. 5F/7). Those findings do not support [Estrella's] extreme opinion.

AR 509. As to the consistency factor, the ALJ opined that Estrella's opinion was not consistent or supported by the findings of other medical doctors and psychologists for the following reasons:

> At Elmhurst Adult Behavioral Health on January 7, 2022, the claimant was calm, pleasant, and well-engaged. At Elmhurst Behavioral Health on February 9, 2022, the claimant presented as calm, pleasant, and well-engaged. On each occasion, the claimant was alert, he did not demonstrate any thought disorder, his perception was unimpaired, and he was oriented to person, place, and time. On each occasion, his memory was unimpaired, his ability to abstract was good, and his intellectual functioning was average (Ex. 9F/6-7, 20-21). At the end of the progress note from January 7, 2022, the examiner wrote that the claimant had worsening symptoms in the latter half of the previous year, in the setting of going off treatment for five or six months. He wrote that the claimant had since resumed medications and was doing much better. The examining medical doctor wrote that on that day, the claimant presented well, reporting further improvement of symptoms (Ex. 9F/21).

> On February 8, 2022, Dr. Nikkah found that the claimant's thought processes were coherent and goal directed with no evidence of hallucinations, delusions, or paranoia in the evaluation setting. The claimant was oriented to person, place, and time. His recent and remote memory skills were moderately impaired due to anxiety and distractibility. He was able to recall three of three objects immediately, but only two of three after five minutes. The claimant could recall four digits forward but only three digits backward. Dr. Nikkah estimated the claimant's intellectual functioning was in the below average range, and he found that the claimant's general fund of information was appropriate to experience (Ex. 7F/4-5). The claimant's demeanor and responsiveness to questioning was cooperative. His overall manner of relating with Dr. Nikkah was adequate, and his eye contact was appropriate (Ex. 7F/4). Dr. Nikkah's clinical findings support some limitations, but

nothing consistent with or supported of the extreme limitations in LMSW Estrella's opinion.

AR 21.  The ALJ concluded that as follows:

> Therefore, with no support from LMSW Estrella's own examination of the claimant, with inconsistencies within his opinion, and with no consistency or supportability with the findings of the examining medical doctors and psychologists, this opinion is not persuasive.

AR 22.

Gomez argues that the ALJ's analysis of Estrella's opinion "relies almost exclusively on treatment records dated three years after [ ] Estrella rendered his opinion" and therefore the ALJ erred in finding that Estrella's opinion was not persuasive.  AR 17.  The Commissioner responds that properly considered Estrella's medical source statement by applying the factors of supportability and consistency but found other medical opinions in the administrative record more persuasive.  AR 11.  The Commissioner further argues that the ALJ must make her RFC determination based on all relevant evidence in the record, and therefore properly considered Dr. Nikkah's opinion and the records from Elmhurst Hospital.  AR 10.

Under SSA regulations, the ALJ is required to formulate the RFC based on all relevant evidence in the record.  *See* 20 C.F.R. §§ 404.1545(a), 416.945(a); *see also Morales v. Berryhill*, 484 F. Supp. 3d 130, 145 (S.D.N.Y. 2020) ("The RFC 'is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities.'") (quoting SSR 96-8P, 1996 WL 374184, at *3 (S.S.A. July 2, 1996)); *see Lesterhuis v. Colvin*, 805 F.3d 83, 86 n.2 (2d Cir. 2015) (holding that "the Commissioner determines, based on all the relevant medical and other evidence of record, the claimant's 'residual functional capacity'") (citing 20 C.F.R. §§ 404.1520, 404.1525, 404.1526, 404.1545). Thus, the ALJ did not err in considering the consistency of Estrella's opinion with other evidence in the record, including Nikkah's psychiatric

report issued in 2022.  As such, that the records are three years apart does not explain how the ALJ improperly applied the SSA regulations as to the consistency factor.

The SSA has explained that the new regulations set forth the "minimum level of articulation" ALJs must "provide in [their] determinations and decisions to provide sufficient rationale for a reviewing adjudicator or court." Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5858 (Jan. 18, 2017) (to be codified at 20 C.F.R. pts. 404, 416), *technical errors corrected* by 82 Fed. Reg. 15132-01 (Mar. 27, 2017).  Here, the ALJ explained her findings regarding the supportability and consistency for Estrella's opinion, pointing to specific evidence in the record supporting those findings.  As to the supportability factor, the ALJ explained that Estrella's statement that Gomez had poor or no ability to understand, remember, and carry out simple job instructions was inconsistent with Estrella's own prior statement that Gomez's thought process was goal directed and logical, that Gomez was able to concentrate for intermittent periods, that Gomez was alert and aware of his surroundings, and that his impulse control was unimpaired.  AR 21.  Thus, as to the supportability factor, the ALJ sufficiently articulated why she found Estrella's medical opinion unpersuasive.  Similarly, as to the consistency factor, the ALJ compared Estrella's findings with Nikkah's medical opinion and found Nikkah's to be more consistent.  The Court finds that the ALJ has properly considered and applied the SSA regulations.

## CONCLUSION

For these above reasons, Gomez's motion for judgment on the pleadings, ECF No. 11, is DENIED and the Commissioner's decision is AFFIRMED.

This Order constitutes a final judgment under Federal Rule of Civil Procedure 58.  The Clerk's Office is respectfully DIRECTED to close the case file.


SO ORDERED.

/s/
ORELIA E. MERCHANT
United States District Judge

September 30, 2024
Brooklyn, New York

23